IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADIDAS AMERICA, INC., a Delaware
corporation

        Plaintiff,

v.

W. BRAND BOBOSKY, a resident of
Illinois; and WE NOT ME, LTD., an Illinois
corporation,

        Defendants.

CV 10-603-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Judge:

        Plaintiff adidas America, Inc. ("adidas") brings this action against defendants W. Brand Bobosky and We Not Me, Ltd. arising from a dispute over the use of the phrase "We Not Me." Plaintiff seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that its use of the phrase does not constitute trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. §1125, and copyright infringement under 17 U.S.C. §§ 101 *et seq.*

Page 1 - FINDINGS AND RECOMMENDATION

Plaintiff also seeks an order cancelling Trademark Registration Numbers 3,119,177 and 3,742,930 belonging to defendant We Not Me, Ltd. Now before the court is defendants' motion to dismiss for lack of personal jurisdiction and for improper venue, or alternative motion to transfer to the Northern District of Illinois (#11). I have examined briefing and heard oral arguments on this motion. For the reasons discussed below, defendants' motion to dismiss for lack of personal jurisdiction should be granted.

## BACKGROUND

Defendant W. Brand Bobosky lives in Naperville, Illinois and owns the federal copyright for a poem titled "We Not Me." (Complaint, #1, ¶¶7,8.) We Not Me, Ltd. is an Illinois corporation that owns two federal trademarks for the mark "WE NOT ME." *Id.* at 19. adidas is the well-known sportswear designer and manufacturer which sells and distributes products in the United States. (Complaint, #1, ¶¶11-12.)

During the 2007 season of the National Basketball Association, adidas manufactured a limited quantity of adidas-branded t-shirts bearing the phrase "we not me" as part of its "Basketball is Brotherhood" campaign. *Id.* at ¶13. The phrase appeared on the shirts beneath adidas' federally registered adidas word mark and its federally registered logo, and directly above the Boston Celtics' federally registered clover logo. *Id.* adidas alleges that it used the phrase "we not me" as a decoration and ornamentation on its t-shirts, not as an identifier of the source of the t-shirts. *Id.* at ¶15.

In November 2007, an attorney for Bobosky contacted general counsel for adidas asserting that adidas had been using Bobosky's copyrighted poem "We Not Me" as part of an advertising campaign involving several prominent members of the NBA. (Friedland Decl., #17,

Ex. A.) That letter reviewed Bobosky's creation and marketing of the phrase "We Not Me," suggested that Bobosky would prefer to settle the matter amicably without the "pall of litigation," and requested a meeting with adidas for Bobosky to share some of his "thoughts and ideas" on the matter. *Id.* at 3.

Between November 2007 and November 2008, counsel for Bobosky, as well as Bobosky himself, sent numerous emails and letters to adidas concerning Bobosky's claim that adidas was infringing his federal copyright and trademark rights. (Friedland Decl., #17, Ex. A.) Bobosky offered several times to visit adidas in Portland, Oregon to discuss his claims, but adidas never accepted his offer. (Friedland Decl., #17, Ex. A at 3, 26, 53.) Finally, in November, 2008, adidas counsel replied to Bobosky at length, explaining perceived weaknesses in his legal claims and terminating communications on the matter. *Id.* at 63-66.

Nearly a year later, in October, 2009, Bobosky and We Not Me, Ltd. filed a lawsuit against adidas and other parties in federal court in Texas. (Complaint, #1, ¶¶32-33.) In April, 2010, the Texas court transferred that action to the District of Oregon. *Id.* at ¶33. That action is now pending before this court as a separate case, No. 10-CV-630-PK.

## LEGAL STANDARDS

I.  **Motion to Dismiss for Lack of Personal Jurisdiction**

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil Procedure Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), *citing Sher v.*

*Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). In evaluating the defendant's motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *citing Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If the court decides the motion based on the pleadings and affidavits submitted by the parties without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id., quoting Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The court accepts uncontroverted allegations contained within the plaintiff's complaint as true, and resolves conflicts between statements contained within the parties' affidavits in the plaintiff's favor. *See, e.g., Boschetto*, 539 F.3d at 1015 (citations omitted). "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Id., citing Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Oregon's long-arm statute creates a standard co-extensive with federal jurisdictional standards, *see* Or. R. Civ. P. 4L, so a federal court sitting in the District of Oregon may exercise personal jurisdiction wherever it is possible to do so within the limits of federal constitutional due process, *see, e.g., Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

Federal due process jurisprudence requires that, to be subject to the personal jurisdiction of a federal court, a nonresident defendant must have at least "'minimum contacts'" with the court's forum state such that "the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Page 4 - FINDINGS AND RECOMMENDATION

# DISCUSSION

## I. Evidentiary Objection

As an initial matter, defendants objects to adidas' declaration of David Friedland and the attached exhibit reproducing communications between Bobosky and adidas. (Friedland Decl., #17.) Defendants contend the declaration and exhibit violate Federal Rules of Evidence 401, 403 and 408. I construe this objection as a motion to strike that declaration and exhibit. In the following analysis, I consider those submissions and ultimately reach the conclusion that plaintiff failed to make a prima facie showing of personal jurisdiction. I would have arrived at the same result even had I excluded that evidence from my review, since eliminating those communications from my analysis further detracts from adidas' already insufficient showing of personal jurisdiction. Thus, I deny defendants' motion to strike as moot and make no ruling concerning the admissibility of the declaration and attachment.[1]

## II. Defendants' Motion to Dismiss

Defendants move to dismiss this action under two separate theories. First, defendants assert that the action should be dismissed under Fed. Rule Civ. P. 12(b)(2) for lack of personal jurisdiction because they have insufficient contacts with Oregon for the court to exercise specific personal jurisdiction. Second, defendants contend that the action should be dismissed

---

[1] I also note, without deciding, that even if defendants' motion to strike was not moot, I would not likely grant the motion on the basis of Fed. R. Evid. 408. Rule 408(a) explicitly lists the prohibited uses of a compromise offer: "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Rule 408(b), however, provides that "[t]his rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)." Thus, I see no reason to exclude the communications containing settlement discussions when offered by plaintiff to establish personal jurisdiction, since establishing jurisdiction is not a purpose expressly prohibited by Rule 408.

Page 5 - FINDINGS AND RECOMMENDATION

under Fed. Rule Civ. P. 12(b)(3) because venue is not proper in this district under 28 U.S.C. 1391(b). Because plaintiff fails to establish that jurisdiction is proper, defendants' motion should be granted.

A. Lack of Personal Jurisdiction

In its complaint, adidas alleges two grounds for this court to exercise personal jurisdiction over defendants: (1) that "on information and belief, Defendants transact business in the State of Oregon, and specifically in this judicial district;" and (2) that "Defendants have otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction." (Complaint, #1, ¶3.) In support of that second basis for personal jurisdiction, adidas alleges that: "Defendants sent adidas and its counsel multiple letters beginning in November 2007 through June 2008, alleging that adidas is infringing a trademark purportedly owned by WNML. The correspondence from Defendants to adidas was sent into the State of Oregon." *Id.* at ¶4.

Although Adidas contends that it has alleged sufficient facts to make out its prima facie showing of this court's specific jurisdiction over defendants, I disagree.[2] The Ninth Circuit applies a three-pronged test for determining whether the exercise of specific personal jurisdiction over a nonresident defendant may be appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

---

[2] adidas does not argue that this court has general jurisdiction over defendants.

Page 6 - FINDINGS AND RECOMMENDATION

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802, *quoting Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The plaintiff bears the burden of satisfying the first two prongs of the test, whereupon the burden shifts to the defendant to " 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id., quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

The first prong of the three part test is often referred to as the "purposeful availment" prong. Nevertheless, the first prong actually includes two interrelated concepts– purposeful direction and purposeful availment– and may be satisfied by defendants' "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). While a purposeful availment analysis is most often used in contract cases, a purposeful direction analysis is most often used in tort cases. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The second prong of the test requires that the plaintiff's claim arise out of the nonresident defendant's forum-related activities. *See Boschetto*, 539 F.3d at 1016.

At the third prong of the test, the burden shifts to the defendant to present a "compelling case" to rebut the presumption that the exercise of specific personal jurisdiction would be reasonable. *See id.*

> In determining reasonableness, th[e] [courts of the Ninth] circuit examine[] seven factors: the extent of purposeful interjection; the burden on the defendant to defend the suit in the chosen forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to

Page 7 - FINDINGS AND RECOMMENDATION

the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

*Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990), *citing Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987). "The court[s] must balance the seven factors to determine whether the exercise of jurisdiction would be reasonable." *Id.*, *citing British-American*, 828 F.2d at 1442.

An important threshold issue in this case is whether to examine purposeful direction, purposeful availment, or both. Plaintiff urges the court to examine purposeful direction and apply the Ninth Circuit's "effects" test, which is typically used in tort cases. *See Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (comparing the "effects" test for torts case with contract cases focusing on activities such as delivering goods or executing a contract). The effects test focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within that forum. *Id.* By contrast, defendants contend that the court should evaluate purposeful availment, the strategy generally followed by courts in contract cases. That analysis focuses on whether the defendant performed some type of affirmative conduct allowing or promoting the transaction of business within the forum state. *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (citing *Sinatra v. National Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988)).

Where the underlying action is copyright infringement, which is often characterized as a tort, purposeful direction is the proper analytical framework. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). In trademark infringement cases, however, Ninth Circuit courts have used both purposeful direction and purposeful availment

Page 8 - FINDINGS AND RECOMMENDATION

frameworks simultaneously, requiring the plaintiff to establish either that the defendant: (1) purposefully availed himself of the privilege of conducting activities in the forum state, or (2) that the defendant purposefully directed its activities toward the forum. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Here, because this case is for declaratory relief from liability for both copyright and trademark infringement, I follow the method of the Ninth Circuit in *Pebble Beach* and require plaintiff to demonstrate either purposeful availment or purposeful direction to satisfy the first prong of the test for specific jurisdiction.[3]

### 1. Purposeful Availment

Typically, purposeful availment consists of action taking place in the forum that invokes the benefits and protections of the laws of the forum. *Schwarzenegger*, 374 F.3d at 803. The ordinary use of phone and mail contacts with the forum state alone do not amount to purposeful availment. *Applied Underwriters, Inc. v. Combined Mgmt.*, No. 08-15014, 2010 U.S. App. LEXIS 6070, at *4 (9th Cir. Mar. 24, 2010) (contract negotiations involving phone and mail were insufficient on their own to establish purposeful availment); *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (series of calls and letters to the forum state were not sufficient for purposeful availment). Further, even lengthy exchanges of business documents and communications with an entity in the forum state does not constitute purposeful availment. *Siskiyou Props., LLC v. Bennett Holdings, LC*, 13 Fed. Appx. 553, 555 (9th Cir. 2001) (negotiations lasting almost a year and involving communications by phone, mail, fax, and email that generated boxes of documents did not constitute purposeful availment). There is no dispute

---

[3] My choice to permit adidas to demonstrate either purposeful availment or purposeful direction is not determinative of the outcome of this motion because I find below that plaintiff fails to make a prima facie showing of either purposeful availment or purposeful direction.

Page 9 - FINDINGS AND RECOMMENDATION

that defendants and plaintiff exchanged a series of email and letter correspondences from November 2007 until November 2008 (Freidland Decl., #17, Ex. A). These communications simply do not constitute purposeful availment under the standards identified by the Ninth Circuit.

Plaintiff's allegations concerning the website operated by defendant We Not Me, Ltd. also do not establish a prima facie case of purposeful availment. A website may amount to purposeful availment, depending on the level of commercial activity conducted by the site over the internet. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997) (passive home page conducting no commercial activity over the internet in forum state does not constitute purposeful availment, but "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.") For an interactive commercial website to constitute purposeful availment, there must be some deliberate action aimed at the forum, such as a transaction between the defendant and the residents of the forum. *See Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 923 (D. Or. 1999) ("Until transactions with Oregon residents are consummated through defendants' Web site, defendants cannot reasonably anticipate that they will be brought before this court, simply because they advertise their products through a global medium which provides the capability of engaging in commercial transactions.")

Here, plaintiff alleges that defendants "transact business" in Oregon by offering products for sale throughout the United States through their website www.wenotme.us. (Pl.'s Compl. for Decl. Judg., # 1, ¶¶3, 17.) Additionally, plaintiff notes that We Not Me, Ltd. described pages from its website as "product literature and ordering information" in a Statement

of Use filed with the USPTO, which indicates that We Not Me, Ltd. was engaged in commerce through its website. *Id.* at ¶30. Defendants, however, state that We Not Me Ltd. operates only a passive website not directly soliciting business in Oregon. (Bobosky Decl., #13, ¶¶ 25,31.) Even accepting plaintiff's allegation that the website offers products for sale nationwide, plaintiff fails to allege any deliberate action by defendants aimed at Oregon specifically and plaintiff also does not suggest that We Not Me, Ltd. has ever sold products to customers in Oregon. Therefore, plaintiff's allegations regarding defendants' website do not establish a prima facie showing of purposeful availment.

### 2. Purposeful Direction

The Ninth Circuit evaluates purposeful direction using the three-part "effects" test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *See Schwarzenegger*, 374 F.3d at 803. Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted). Here, plaintiff argues that all three elements of the effects test are satisfied because: (1) defendants intentionally sent extensive correspondence over thirteen months to adidas to negotiate a sale of intellectual property rights; (2) defendants expressly aimed their correspondence at adidas in Oregon intending to negotiate that sale; and (3) defendants caused adidas harm by threatening legal action if the negotiations failed.

Ninth Circuit cases have held that cease and desist letters do not constitute purposeful direction. In *Yahoo! Inc. v. La Ligue Contre Le Racisme*, the court reasoned that such letters

serve an important purpose in resolving disputes and should not confer personal jurisdiction:

> There are strong policy reasons to encourage cease and desist letters. They are normally used to warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation. If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter.

*Yahoo! Inc.*, 433 F.3d at 1208. There, the court acknowledged that cease and desist letters can form the basis for personal jurisdiction in limited cases. *Id.* (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ( a cease and desist letter that is intended to wrongfully interfere with an entity's use of its intellectual property can confer personal jurisdiction).

The general rule that cease and desist letters do not confer personal jurisdiction also applies to longer series of correspondences following such letters. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (cease and desist letter sent to a potential patent infringer coupled with offers to license are insufficient to establish the personal jurisdiction, even where the recipient sues for declaratory relief as a direct response to those letters); *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 36-38 (9th Cir. 1980) (no personal jurisdiction in declaratory judgment action where defendant initially sent plaintiff a cease and desist letter concerning patent infringement and the parties had subsequent correspondence about infringement where nothing was resolved); *Picturewall Co. v. Rice*, No.C 09-5442 PJH, 2010 U.S. Dist. LEXIS 42513, at *6–7 (N.D. Cal. Apr. 29, 2010) (declaratory judgment defendant did not submit to personal jurisdiction by sending standard infringement letters and offers to sell a license under defendant's patent, because the offer was made under the shadow of suspected

ongoing patent infringement by plaintiff).

Here, the correspondence between Bobosky and adidas does not confer personal jurisdiction because it consists of a cease and desist letter followed by a predominantly one-side attempt to settle the infringement case by licensing defendants' intellectual property to adidas. Bobosky's initial correspondence to adidas in November, 2007 is both a cease and desist letter (notifying adidas of its infringement) as well as an initiation of settlement negotiation (suggesting the desirability of an amicable resolution). (Friedland Decl., #17, Ex A. at 2-3.) The parties then sent several non-substantive emails regarding Bobosky's potential claim. *Id.* at 4-19. In January, 2008, adidas responded with an analysis of Bobosky's claim asserting that adidas had not violated defendants' intellectual property rights and telling Bobosky that adidas considered the matter closed. *Id.* at 20. After that definitive rejection, Bobosky continued sending letters to adidas proposing further discussion. *Id.* at 22-64. None of these letters were answered beyond a brief confirmation of receipt. On November, 22, 2008, adidas sent Bobosky a final email explaining why it believed Bobosky's claims were invalid. Overall, like the cease and desist letters and subsequent licensing negotiations in the patent infringement cases cited above, Bobosky's letters and emails to adidas do not demonstrate that Bobosky purposefully directed his activities to Oregon.

Since adidas fails to make a prima facie showing that defendants either purposefully availed themselves of the privilege of conducting activities in Oregon or purposefully directed their activities toward Oregon, adidas does not establish the first prong of the test for specific personal jurisdiction. Accordingly, there is no need to address the other two prongs of the test; plaintiff has not met its burden to demonstrate that jurisdiction is proper. Thus, I need not

Page 13 - FINDINGS AND RECOMMENDATION

consider the issue of improper venue, defendants' alternative ground for dismissal, or defendants' alternative motion to transfer venue under 28 U.S.C. § 1406(a). Defendants' motion to dismiss for lack of personal jurisdiction should be granted.[4]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction (#11) should be granted and judgment entered.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

//

//

//

//

//

//

//

---

[4] Presumably, adidas may choose to re-file this action in another forum or file a declaratory relief counterclaim in Case No. 10-CV-630-PK now pending before this court. *See Altvater v. Freeman*, 319 U.S. 359, 363-364, 63 S. Ct. 1115, 87 L. Ed. 1450 (1943) (validity of patent may be raised by counterclaim for declaratory judgment in suit for patent infringement).

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 7th day of October, 2010.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge